UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HARRIS L. WILLIAMS | CIVIL ACTION NO. 15-2353 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STATE OF LOUISIANA, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 28) filed by Defendants. Defendants seek the dismissal of Plaintiff Harris L. Williams' ("Williams") racial discrimination claims in their entirety with prejudice. Williams opposes the motion. See Record Document 34. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

Also before the Court are two additional motions which relate to Defendants' Motion for Summary Judgment: (1) a Motion to Strike (Record Document 43) filed by Defendants; and (2) a Motion to Propound Requests for Admissions FRCP 56(e)(1) (Record Document 47) filed by Williams. For the reasons set forth below, both the Motion to Strike and the Motion to Propound Requests for Admissions are **DENIED AS MOOT**.

**I.    BACKGROUND.**

Williams is currently employed as a welding instructor at the Northwest Louisiana Technical College in Shreveport, Louisiana ("the Shreveport campus"). See Record Document 64 at 2. In April 2004, he was hired as an "adjunct professor" to teach welding at the Shreveport campus. See Record Document 28-3 at ¶ 11; Record Document 34-1 at ¶ 11. At that time, he had no technical certifications and his welding qualifications were on the job training. See id. Williams became a nine month contract instructor in welding

at the Shreveport campus in 2005. See Record Document 64 at 3. He became a twelve month contract instructor effective August 11, 2014, again at the Shreveport campus. See id. The last nine month contract under which Williams worked began on August 19, 2013 and expired in May 2014. See Record Document 28, Exhibit G; Record Document 28-3 at ¶ 2; Record Document 34-1 at ¶ 2. Williams has performed his duties as a welding instructor continuously from his date of hire in April 2004 to present at the Shreveport Campus. See Record Document 64 at 3; Record Document 34-2. In his deposition, Williams stated that his job is a lot better now. See Record Document 28, Exhibit F at 118-120.

Williams alleges that his inability to enter into a twelve month contract between 2008, the date he asserts he requested a twelve month contract, and August 2014 was due to his race. Defendants submit the reason was budgetary, as there have been regular hiring freezes and budget cuts to higher education since 2008. See Record Document 28-3 at ¶ 4. Williams denies this contention "because there was no definitive end to the policy and it was often ignored." Record Document 34-1 at ¶ 4. The parties do agree that nine month faculty members are less of a tax on the budget than twelve month faculty members. See Record Document 64 at 4. Likewise, the parties agree that both nine month instructors and twelve month instructors are full-time employees. See id. at 4.

At some point in 2014, Williams learned of an opening for a twelve month welding instructor contract position at the Mansfield campus. See Record Document 28, Exhibit I at 42-44. Williams admits that Angie Rymer ("Rymer"), the former dean of the Shreveport Campus and Williams' direct supervisor, communicated information regarding this position to him and seemed to suggest that he should apply. See id. at 42-44, 106-107. Williams

failed to apply for the Mansfield position because "[he] didn't want to go down there." Id. In his deposition, Williams admitted that there was never a twelve month welding position open at the Shreveport campus and that there were no twelve month welding instructors while he was employed at the Shreveport campus. See Record Document 28-3 at ¶ 18; 34-1 at ¶ 18; Record Document 28, Exhibit I at 107.

Williams alleges that Defendants failed to award him a twelve month contract because of his race.[1] See Record Documents 3 & 64. He filed an EEOC charge of discrimination on November 4, 2013. See Record Document 3 at ¶ 3A. On September 10, 2015, he filed the instant lawsuit under 42 U.S.C. § 1983, 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* See Record Documents 1 & 3. The remaining Defendants are the State of Louisiana ("the State") through its Louisiana Community and Technical College System ("LCTCS") and Board of Regents; Charles Strong ("Strong"), the former Regional Director of the Louisiana Northwest Technical College; Rymer, the former dean of the Shreveport Campus of the Louisiana Northwest Technical College and Williams' direct supervisor; and Amber Saunders ("Saunders"), the current Chief Human Resources Officer for the Louisiana Northwest Technical College. See Record Document 64. Strong, Rymer, and Saunders are sued in their individual capacities.[2] See id.

---

[1] All retaliation claims were voluntarily dismissed with prejudice on January 9, 2017. See Record Document 58. All claims arising out of an allegation that Williams was denied faculty overload compensation were dismissed with prejudice on January 12, 2017. See Record Document 61. In his opposition, Williams stated that he had no failure to promote claim and agreed to the dismissal of such claim. See Record Document 34 at 13.

[2] Defendant Rick Bateman was voluntarily dismissed on October 21, 2016. See Record Document 27. Defendants Monty Sullivan and Joseph Rallo were voluntarily

## II. LAW AND ANALYSIS.

### A. Motion to Strike and Motion to Propound Requests for Admissions.

Defendants' Motion to Strike relates to exhibits attached to Williams' opposition to Defendants' Motion for Summary Judgment, specifically Record Documents 34-2, 34-4, 34-9, and 34-3, and portions of exhibits attached to Williams' supplemental opposition, specifically Record Documents 38-2, 38-3, and 38-4. For the most part, Defendants object to these exhibits on the grounds of authenticity and hearsay.

Williams filed a Motion to Propound Requests for Admissions in response to the Motion to Strike. The exhibits at issue in this motion are personnel records that Williams alleges evidence higher pay for lesser qualified white employees. Pursuant to Rule 56(e)(1), Williams seeks leave of court to propound Requests for Admissions to overcome Defendants' objection to such personnel records based on lack of authenticity.

The Court has reviewed these motions and the challenged exhibits in their entirety. For the limited purpose of the instant Memorandum Ruling, this Court will assume the authenticity of the challenged documents. If necessary after the conclusion of dispositive motion practice, any remaining authenticity and hearsay challenges will be addressed by the Court prior to trial. Thus, at this stage, both the Motion to Strike and the Motion to Propound Requests for Admissions are **DENIED AS MOOT**.

### B. Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there

---

dismissed on January 23, 2017. See Record Document 67.

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." F.R.C.P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

### C. Claims Against the State, the LCTCS, and the Board of Regents.

In the proposed pretrial order, the parties identify as a defendant the "State of Louisiana through its LCTCS and Board of Regents." Record Document 64 at 2. With this statement, Williams appears to concede that any claims asserted against the LCTCS and the Board of Regents are in actuality claims against the State. Williams also concedes that "the State of Louisiana and its arms [are] entitled Eleventh Amendment immunity" for claims arising under 42 U.S.C. §§ 1981 and 1983. Record Document 34 at 13.

Pursuant to Federal Rule of Civil Procedure 17(b), Defendants further argue that LCTCS and NWLTC are not juridical entities capable of being sued. In <u>Hall v. Board of Supervisors of Community and Technical Colleges, et al.</u>, No. 15-67, 2015 WL 2383744 (E.D. La.), the court addressed whether the LCTCS and Delgado Community College were juridical entities with procedural capacity to be sued. The court ultimately dismissed the claims against LCTCS and Delgado Community College, holding:

> Movant's first ground for dismissal is that Defendants Delgado and the LCTCS are not juridical entities with the procedural capacity to sue and be sued.
>
> . . .
>
> Plaintiff points this Court's attention to Louisiana Revised Statute section 17:1871 to support her argument that Delgado and LCTCS have procedural capacity because this statute grants them the authority to manage and supervise their own systems. To the contrary, section 17:1871 provides for the creation of the Board of Supervisors of Community and Technical Colleges, the Movant herein, and grants the Board the power to supervise and manage certain institutions of higher education. Indeed, nowhere in this statute, or any other located by this Court, is Delgado or LCTCS granted the authority to do anything. Louisiana Revised Statute section 17:3217.2 states that "[e]ffective July 1, 1999, Delgado Community College . . . is transferred to the [LCTCS] under the management of the Board of Supervisors of Community and Technical Colleges." Louisiana Revised Statute section 17:3217.1 further states that "the [LCTCS] is composed of the institutions

> under the supervision and management of the Board of Supervisors of Community and Technical Colleges as follows: . . . (4) Delgado Community College." . . . Therefore, this Court holds that Delgado and LCTCS are not juridical entities and thus do not have the capacity to be sued. They are dismissed from this suit with prejudice.

Id. at *2. This Court finds the reasoning set forth in Hall to be persuasive and likewise holds that the LCTCS is not a juridical entity and it lacks the capacity to sue or be sued.

As to the Board of Regents, "it is well-settled in the Fifth Circuit that institutions of higher education and their boards are arms of the state entitled to immunity." Id. at *4. Moreover, the Board of Regents' powers of management over public institutions of post-secondary education do not apply to the LCTCS, as such powers are specifically reserved to the Board of Supervisors of the LCTCS. See La. Const. Art. 8, § 5; La. R.S. 17:1871. Thus, to the extent necessary, both the LCTCS and the Board of Regents are **DISMISSED WITH PREJUDICE**.

In his EEOC Charge of Discrimination, Williams named the Northwest Louisiana Technical College as his employer. See Record Document 28, Exhibit B. Defendants argue that this excludes the State and any other named entity defendant as an "employer" under Title VII. The Court disagrees, finding that the State was Williams' employer for purposes of Title VII.[3] Therefore, this Court will analyze Williams' Title VII claims against the State, not the LCTCS or the Board of Regents.

### D. Claims Against Rymer, Saunders, and Strong.

Williams concedes in both his opposition and the proposed pretrial order that he has

---

[3]The Court notes that the proposed pretrial order filed by the parties states that "Williams is a current instructor employed by Defendant State of Louisiana through its Northwest Louisiana Technical College in Shreveport, Caddo Parish LA." Record Document 64 at 2.

no cause of action against Ryder, Saunders, and Strong under Title VII. See Record Document 34 at 13; Record Document 64 at 13. He likewise concedes that there are no official capacity claims for injunctive relief pending before the Court. See Record Document 34 at 13. Thus, Williams is pursuing Section 1981 and Section 1983 claims against these individual defendants in their individual capacities. Rymer, Saunders, and Strong have asserted qualified immunity as to these claims, arguing that their actions were objectively reasonable at all time vis-a-vis Williams' employment.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (citations and quotations omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Pratt v. Harris Cty., Tex., 822 F.3d 174, 181 (5th Cir. 2016) (citations and quotations omitted).

In determining qualified immunity, courts engage in a two-step analysis. First, they assess whether a statutory or constitutional right would have been violated on the facts alleged. See Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004). Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. See id. (citations and quotations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308 (2015) (citations and quotations omitted). There need not be a case directly on point, but "existing precedent must have placed the

statutory or constitutional question beyond debate." Id. (citations and quotations omitted). The two steps of the qualified immunity inquiry may be performed in any order. See Pearson, 555 U.S. at 236, 129 S.Ct. 808.

### E. Statute of Limitations.

Defendants move for summary judgment as to Williams' racial discrimination claims on the ground that such claims are time barred in whole or in part. As to his Title VII claim, Defendants argue that the only timely allegation relates to the discrete award of the 2013-2014 nine month contract and any allegations relating to prior contracts are untimely. Defendants contend that Williams' Section 1981 and Section 1983 claims are time barred in their entirety because the instant lawsuit was filed on September 10, 2015, more than one year after the expiration of the last nine month contract on May 25, 2014.

Title VII

Under Title VII, an individual must file a charge of discrimination with the EEOC within the statutory period, that is, within 300 days of the employment practice of which he complains. See 42 U.S.C. 2000e-5(e)(1). A claim is time barred if not filed within this period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). "Discrete, discriminatory acts are not actionable if time barred, even when they relate to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113, 122 S.Ct. at 2072.

Williams frames his racial discrimination claim as one for discriminatory pay under the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), which would result in a lengthier statutory period within which to file his charge of discrimination. However, a review of his opposition evidences that his claims arise solely from Defendants' failure to afford him a twelve month

contract. See Record Document 34.[4] All of his claims and allegations are merely incidental to the award of – or the failure to award – a twelve month contract. Williams filed his EEOC charge of discrimination on November 4, 2013. See Record Document 3 at ¶ 3A. Thus, any claim arising from the allegation that Defendants unlawfully failed to award him a twelve month contract is barred except to the extent that the contract was entered within 300 days prior to Williams' filing his charge of discrimination. Williams' final nine month contract began on August 19, 2013 and terminated on May 24, 2014, after which he was awarded a twelve month contract. See Record Document 28, Exhibit G. Therefore, the only timely allegation under Title VII relates to the discrete award of the 2013-2014 nine month contract. Williams' claims and allegations relating to prior nine month contracts are untimely.

Section 1981

Williams asserts that the statute of limitations for pay claims under Section 1981 is four years." He argues:

> Thus, the Section 1981 claim filed [in] September 2015 is within the time frame where white instructors obtained 12 month contracts in 2011. . . . The last date of discrimination in this pay discrimination claim under Section 1981 is August, 2014, the day before the State acting through Dr. Bateman provided a twelve month contract to Mr. Williams. . . . Suit was filed September 25, 2015. The applicable statute of limitations is four years.

---

[4]In his opposition, Williams stated that "he experienced an adverse employment action by being denied a 12 month contract." Record Document 34 at 19. In a supplemental filing, he stated:

> Plaintiff makes no comparison of total dollar value paid annually. Plaintiff makes comparison between awards of 12 month and 9 month contracts. That is what is critical.

Record Document 38 at 4.

Thus, suit against Rymer, Saunders and Strong is timely on this claim. Record Document 34 at 14-15.

Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S.Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir.1985). "However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations." Culbert v. Cleco Corp., 926 F.Supp.2d 886, 891 (W.D. La.), aff'd, 538 F. App'x 504 (5th Cir. 2013), citing 28 U.S.C. § 1658.

Section 1981 originally covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Id., citing Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S.Ct. 2363, 2374 (1989). The statute provided no protection "against harassing conduct that occurred after the formation of the contract." Id., citing Jones, 541 U.S. at 372, 124 S.Ct. at 1840. Later, Section 1981 was amended "to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract." Id. Thus, the applicable statute of limitations under Section 1981 depends upon whether the plaintiff's claim was actionable under the older version or is only made possible by the later amendments. See Culbert, 926 F.Supp.2d at 891. The Culbert court explained:

> Where the plaintiffs claim was available under the original section 1981, the

> court must apply the analogous state statute of limitations, which in Louisiana is one year. However, where the claim is only available under section 1981 as amended, the cause of action is said to arise under the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies.

Id. (internal citations and quotations omitted).

Williams' opposition evidences that his racial discrimination claim is based, in its entirety, on Defendants' failure to award him a twelve month contract. See Record Document 34 at 19 (stating that "he experienced an adverse action by being denied a twelve month contract."). His allegations fall squarely within the original coverage of Section 1981. In Johnson v. Crown Enterprises, Inc., 398 F.3d 339 (5th Cir. 2005), the court determined that the plaintiff's racial discrimination claim grounded in the defendant's failure to renew his contract was subject to the one year limitations period with regard to plaintiff's Section 1981 claim. Likewise, in Michel v. Saint-Gobain Containers, Inc., No. 05-207, 2005 WL 3339568 (W.D. La. 2005), another court within the Western District of Louisiana stated, "The Fifth Circuit has held that when a plaintiff's claim is based on the failure to enter a new contract, the limitations period of Section 1981 remains unaltered and subject to the state's prescriptive period – in this case Louisiana's one year prescriptive period." Id. at *4, citing Johnson, 398 F.3d at 341. Based on these legal principles, Williams' Section 1981 claims are time barred because the last contract awarded to him for a 9 month period commenced on August 19, 2013 and expired May 25, 2014. Yet, he did not file suit until September 10, 2015. Williams' Section 1981 claims against Rymer, Saunders, and Strong are time barred and **DISMISSED WITH PREJUDICE**.

Section 1983

Williams did not address the Defendants' argument that his Section 1983 racial discrimination claim was time barred. Thus, he has effectively abandoned this claim. See Milton v. Boise Cascade, L.L.C., No. 08-1854, 2011 WL 285091, at *5 (W.D.La. 2011); see also Keenan v. Tejeda, 290 F.3d 252, 262-263 (5th Cir. 2002). Therefore, Williams' Section 1983 claims against Rymer, Saunders, and Strong are **DISMISSED WITH PREJUDICE**.

    **F.    Race Discrimination Claim.**

Williams' only remaining claim is his Title VII racial discrimination claim against the State relating to the discrete award of the 2013-2014 nine month contract. Williams' claims and allegations relating to prior nine month contracts are untimely. Notwithstanding, the Court will analyze Williams' Title VII racial discrimination claim that Defendants failed to award him a twelve month contract on the basis of his race. As stated previously, the focus of his case is the awarding of nine month contracts versus twelve month contracts and the alleged detrimental effect of such on his salary.

Pursuant to Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1). Williams has not provided direct evidence of racial discrimination, therefore, his claim based on circumstantial evidence is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817,

1824-1825 (1973). Williams must first establish a *prima facie* case of discrimination by establishing that he (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for his position, and (4) that others similarly situated were treated more favorably. See Jusuf v. Sw. Airlines Co., No. 08-10383, 2008 WL 4948615, at *3 (5th Cir. Nov. 20, 2008), citing Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir.2005). The burden then shifts to the employer "to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142-143, 120 S.Ct. 2097, 2106 (2000). "This burden is one of production, not persuasion; it can involve no credibility assessment." Id. If the defendant employer carries its burden, the mandatory inference of discrimination created by the plaintiff's *prima facie* case, drops out of the picture and the fact finder must decide the ultimate question: whether the plaintiff has proven intentional discrimination. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). In making this showing, the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination. See McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825.

Here, there is no dispute that Williams is a member of a protected class because he is an African American. Defendants also do not dispute that Williams was qualified for his position. Defendants argue that Williams cannot establish a *prima facie* case of race discrimination because (1) in many instances the alleged wrongful conduct did not rise to the level of an "adverse action," and (2) Williams cannot demonstrate that Defendants treated others similarly situated, but outside of the protected class, more favorably. Record Document 28-2 at 14.

This Court will focus on prong four of Williams' *prima facie* case, that is, were others similarly situated and outside of the protected class treated more favorably. Williams maintains that "similarly situated white instructors were treated more favorably than [him]." Record Document 34 at 20. To establish a *prima facie* case in this manner, Williams must show that white employees were treated differently under circumstances "nearly identical" to his. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995); see also Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir.1991); Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir.1990); Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570-571 (5th Cir. Unit B 1982).

In Lee v. Kansas City Southern Ry. Co., 574 F.3d 253 (5th Cir .2009), the Fifth Circuit discussed the general parameters of the similarly situated standard. The Lee court explained that "nearly identical" is not synonymous with "identical." Id. at 260. However, the Fifth Circuit reasoned:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities . . . are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.

Id. at 259-260; see also Morris v. Town of Indep., 827 F.3d 396, 401 (5th Cir. 2016).

Williams maintains that "all instructors who teach full-time, not counting nursing, do essentially the same job. . . . It does not matter if the instructor is teaching HVAC, welding

or plumbing. They work the same hours. They perform the same responsibilities of teaching students a subject." Record Document 34 at 20. He identified five white instructors at the Shreveport campus who were awarded twelve month contracts. See id. at 21-22. These instructors include Christopher Shepherd; Daniel King; Clay Giecek; Eric Nixon; and Thomas Cravatt. See id. at 22. Williams also identified white welding instructors at other locations that were allegedly treated more favorable by being awarded a twelve month contract. See id. These instructors include James Rascoe; James Acklin; Christopher Fletcher; and Tommy Rascoe. See id. at 22-23.

Williams relies on the sworn statement of Faye McDonald ("McDonald") to support his contention that similarly situated white instructors were treated more favorably than him. See Record Document 34-3 at 15-18. Rymer hired McDonald as an adjunct instructor in the business discipline at the Shreveport campus. McDonald was laid off in 2014. In her sworn statement, McDonald stated:

> Only welding did not have a 12 month contract after Mr. Williams' hire in 2004.
>
> . . .
>
> White instructors with much lower student loads were provided 12 month contracts.

Id. at 17-18.

Here, the Court finds that Williams has not met his burden of establishing the fourth prong of his *prima facie* case, that is, that others similarly situated and outside the protected class were treated more favorably. See Jusuf, 2008 WL 4948615, at *3. The evidence presented by Williams in the form of comparator charts (Record Documents 34-4, 41-1 & 41-2) is simply insufficient for this Court to determine whether the comparators were

treated differently under circumstances nearly identical. Williams does not offer any competent summary judgment evidence outlining key facts and circumstances needed when considering the similarly situated standard. While the Court has assumed the authenticity of many documents submitted by Williams to support his claim, there is insufficient evidence ss to important factors listed in the charts such dates of hire, length of employment/seniority, and credentials/qualifications. The Court further notes that the comparators located at the Shreveport campus were not welding instructors and that Williams has provided this Court with no case law to support his contention that all instructors, regardless of discipline, are appropriate comparators because "all instructors who teach full-time, not counting nursing, do essentially the same job." Likewise, Williams offers no competent summary judgment evidence to support his contention that it was a "tradition" to have at least one instructor in each discipline be a twelve month contract employee. For these reasons, summary judgment in favor of the State is **GRANTED** as to Williams' Title VII racial discrimination claim.

### III.     CONCLUSION.

Defendants' Motion for Summary Judgment (Record Document 28) is hereby **GRANTED** and all of Williams' racial discrimination claims are **DISMISSED WITH PREJUDICE**. The Motion to Strike (Record Document 43) filed by Defendants and the a Motion to Propound Requests for Admissions FRCP 56(e)(1) (Record Document 47) filed by Williams are **DENIED AS MOOT**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith. The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of January, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE